Argued and submitted October 14, 1996, affirmed June 24, 1998

In the Matter of the Compensation of
William B. Hill, Claimant.

William B. HILL,
*Petitioner,*

*v.*

TRI-COUNTY METROPOLITAN TRANSIT
DISTRICT OF OREGON (TRI-MET),
*Respondent.*

(WCB 94-09247, 94-09245, 94-09246; CA A92343)

962 P2d 758

Dennis O'Malley argued the cause and filed the brief for petitioner.

Travis Terrall argued the cause for respondent. With him on the brief was Terrall & Associates.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., dissenting.

**EDMONDS, J.**

Claimant seeks review of an order of the Workers' Compensation Board denying his occupational disease claim relating to his left shoulder. The only medical evidence that supports compensability is the opinion of claimant's treating physician. The Board found that opinion not persuasive and ruled that claimant had not carried his burden of demonstrating compensability. We review for substantial evidence and errors of law, ORS 183.482(7) and (8), and affirm.

Claimant has been a bus driver for employer since 1974. An occupational disease claim for his left shoulder was made in 1994 when plaintiff's treating physician sought authorization for surgery. Employer refused authorization, and the matter went to hearing. The administrative law judge (ALJ) found that claimant had an accepted 1977 worker's compensation injury claim relating to his left shoulder. However, claimant testified that he has a problem with long-term memory as a result of a reaction to medication in 1978 and that he did not remember the disputed claim settlement agreement that settled his 1977 claim. Employer offered Exhibits A and B at the hearing. Exhibit A is a copy of a 1982 disputed claim settlement agreement between SAIF, employer's insurer at the time, and claimant regarding an aggravation claim relating to the 1977 injury. Exhibit B is a copy of a 1992 hospital admissions report regarding claimant's surgery for an umbilical hernia. The report states that claimant "had mild arthritis in his shoulders and thoracic spine."

Claimant objected to the admission of Exhibits A and B, contending that they should have been submitted to him in response to his prehearing discovery request. He argued that the failure of employer to provide discovery of the exhibits prevented him from obtaining medical evidence that might have supported his occupational disease claim. He requested an opportunity to review all the 1977 claim file material and to obtain additional medical evidence in light of that material. The ALJ admitted Exhibits A and B solely for purposes of impeachment and granted claimant's request to examine the 1977 claim file. She also denied claimant's

request for leave to submit additional medical evidence, but permitted him to submit information from the 1977 file. Ultimately, claimant submitted Exhibits C, D and E. Exhibit C is a workers' compensation 801 form dated May 20, 1977, in which claimant reported left shoulder strain. The 801 form indicates that the claim was accepted by employer's then insurer as a disabling injury on May 26, 1977. Exhibit D is a May 24, 1977, medical report in which claimant reported pain in his left shoulder.[1] Exhibit E is a November 22, 1978, settlement document regarding a civil action relating to a 1978 motor vehicle accident in which claimant was injured. Exhibit E makes no reference to any left shoulder injury resulting from the accident.

After the evidentiary record was closed, the ALJ upheld employer's denial of claimant's occupational disease claim. Claimant appealed to the Board, arguing that the ALJ erred in upholding employer's denial and in declining to permit claimant leave to present additional medical evidence. Claimant also requested that the matter be remanded to the ALJ and that the evidentiary record be reopened. The Board agreed with the ALJ that claimant had not established a compensable occupational disease claim on the record before it and affirmed her rulings. In response to claimant's argument that the case should be remanded to the ALJ for reopening of the evidentiary record, the Board, in deference to claimant's argument, deemed the evidence from the 1977 file to be unfavorable to claimant's position and excluded Exhibits A, B, C, D and E from consideration as part of an alternative analysis of the evidence. Even after the evidence from employer's file regarding the 1977 injury claim was excluded, the Board remained unpersuaded that claimant had demonstrated a compensable claim. It said:

"Dr. Schader [claimant's treating physician] provides no explanation for his opinion. Furthermore, the record establishes that claimant sought treatment over the years for left shoulder pain and was diagnosed with tendinitis and bursitis without any indication as to the cause of these conditions.

---

[1] Because claimant admitted Exhibits C and D for substantive purposes, the ALJ could properly rely on those documents to reverse or uphold the employer's denial of the claim.

"Dr. Schader did not address these left shoulder conditions; instead, he simply stated, without explanation, that claimant's current left shoulder condition was due to claimant's driving a bus for 19 years."

■    On review, claimant argues that the Board erred in not remanding the case to the ALJ and in refusing to permit the reopening of the hearing so that claimant would have an opportunity to obtain additional medical evidence based on the information about the 1977 claim. Claimant also focuses on the effect of the ALJ's rulings regarding Exhibits A, C and D, arguing that admitting them into the record was error. He first asserts that employer violated OAR 438-07-015(2) (1994),[2] which provides, in part:

"Within 15 days of [the request for hearing] the insurer or self-insured employer shall furnish the claimant and other insurers, without cost, originals or legible copies of all medical and vocational reports, records of compensation paid, and all other documents pertaining to the claim(s)."

OAR 438-07-017 (1994) provides:

"All medical or vocational material pertaining to, and created on or after the date of injury or exposure giving rise to, the claim(s) in issue at the hearing shall be disclosed under 438-07-015. Other documents reasonably believed relevant and material only for purposes of impeachment of a witness need not be disclosed in advance of hearing and may be offered and admitted solely for impeachment. Documents so offered shall not be considered by the referee as substantive evidence. Upon request, all such documents shall be disclosed prior to the close of the hearing, whether or not offered, at which time the other party may offer the documents as substantive evidence."

■    We do not agree with claimant's argument that the ALJ's rulings violated the above rules. Claimant objected to the admission of Exhibit A. That exhibit was received only for impeachment purposes. Under OAR 438-07-017, the ALJ did not err. Employer was not required to furnish discovery of Exhibit A under OAR 438-07-015(2) so long as it reasonably believed that the exhibit was relevant only for impeachment

---

[2] The hearing before the ALJ was held on October 31, 1994. We apply the administrative rules that were in effect at that time.

of claimant's position that his left shoulder condition in 1993 was the result of his work for employer. Claimant testified that he never had any problems with his left shoulder before March or April 1993. Evidence of a 1982 disputed claim settlement of an aggravation claim relating to the 1977 injury is evidence that impeaches claimant's testimony in that respect. Exhibit A is not a document subject to disclosure under OAR 438-07-015. It is about an injury claim accepted by a former insurer that occurred 17 years before the occupational disease claim that is the subject of this case. Moreover, there is nothing in the record to demonstrate that employer lacked a reasonable belief that the document was relevant only for impeachment purposes. As to the admission of Exhibits C and D, claimant cannot be heard to complain about the consideration of them by the Board and the ALJ when he offered them into evidence and they were considered by the ALJ.

■    Claimant's next argument is that the ALJ's refusal to reopen the evidentiary record, thus preventing claimant from submitting additional medical evidence, was erroneous. In that regard, OAR 438-06-091(3) provides that the referee may continue a hearing

"[u]pon a showing of due diligence if necessary to afford reasonable opportunity for the party bearing the burden of proof to obtain and present final rebuttal evidence or for any party to respond to an issue raised for the first time at a hearing[.]"

In light of the rule, claimant argues:

"In this case, the new evidence was produced in the middle of the hearing having been withheld in violation of the Board's rules. * * * In this case the new evidence raised new evidence and changed the claimant's burden of proof. At the very least [claimant] was entitled to an opportunity to address that new evidence, those new issues and that new burden of proof."

On this record, we are unwilling to hold that the ALJ abused her discretion under OAR 438-06-091(3) when she refused to reopen the hearing. As we have held, there was no discovery violation. The claimant had the burden under the rule of showing due diligence regarding his failure to offer at the

hearing whatever new medical evidence he has in mind. The issue of the compensability of the 1993 claim was not a "new" issue that arose during the hearing, and Exhibits A, C and D were in existence before claimant went to hearing. Moreover, for all that the record suggests, claimant wanted the hearing reopened so that he could go on a "fishing expedition" with no guarantee that the new evidence would be relevant or material in an effort to try to generate additional medical evidence. Also, although claimant testified that he suffered no problems with his left shoulder before March or April 1993, the ALJ found that testimony was not credible. In light of all of these circumstances, there is nothing in the record that convinces us that claimant made the required showing of due diligence under OAR 438-06-091 and that the ALJ abused her discretion in denying the motion to reopen the record.

For the most part, claimant's other arguments assert in a number of different ways that the ALJ and the Board erred because claimant was deprived of the opportunity to introduce additional medical evidence. They are resolved by reference to the applicable rules and do not warrant further discussion. Claimant's remaining arguments that are unrelated to the refusal to reopen the record also do not warrant discussion.

In summary, we hold that the ALJ did not err in admitting Exhibit A for purposes of impeachment and in denying claimant's request to reopen the hearing to provide additional medical evidence. In that light, the Board's review of the record including Exhibits A, C and D and alternatively without them, was not error. Even without the contested exhibits, the Board was unpersuaded that claimant's 1994 occupational disease claim was compensable. The Board's reasons for rejecting Dr. Schader's medical opinion are reasonable, and it was not required to accept his opinion. It follows that claimant failed to carry his burden of persuasion.

Affirmed.

**ARMSTRONG, J.,** dissenting.

Because I conclude that employer violated OAR 438-07-015(2) (1994) by failing timely to provide claimant

with documents in its claims file, including Exhibits A, B, C and D, I dissent.

OAR 438-07-015(2) required employer to furnish claimant, within 15 days of his hearing request, "all medical and vocational reports, records of compensation paid, *and all other documents pertaining to the claim(s)*." (Emphasis supplied.) Claimant submitted a claim for an occupational disease. An occupational disease is defined by ORS 656.802(1) to be

"[a]ny disease * * * arising out of and in the course of employment caused by * * * activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death, including:

"* * * * *

"(C) Any series of traumatic events or occurrences which requires medical services or results in physical or mental disability or death."

Reading the discovery rule with that definition in mind, it is clear that the withheld documents pertain to the present claim and, therefore, that employer was *required* to disclose those documents. The withheld documents track a series of injuries to claimant's left shoulder that may have been caused by his employment. As such, they pertain to his claim that, over the period of his employment, he was subjected to conditions resulting in an injury to his left shoulder.

Because the disputed documents were subject to discovery under OAR 438-07-015(2), the majority's interpretation and application of OAR 438-07-017(4) (1994) is irrelevant. The discovery violation occurred, and the only remaining question is whether the Board properly addressed the violation. I conclude that it did not.

Under OAR 438-07-015(5), failure to comply with the discovery requirement may be considered grounds for a continuance or for exclusion of the objectionable evidence. The ALJ refused to grant a continuance. The Board concluded that it did not have to decide the discovery issue, because, even if it were to exclude the disputed evidence,

claimant could not prove his claim.[1] The Board apparently assumed that the disputed evidence could only hurt claimant's claim, so it was not necessary to determine whether there was a discovery violation and, if there was, whether a continuance to permit claimant to address the newly disclosed evidence would be appropriate. Because the withheld evidence could support claimant's claim, the Board must determine whether employer violated OAR 438-07-015 by withholding the claims file from claimant.

The Board rejected the opinion of claimant's treating physician, in part, because the opinion failed to explain the relationship between the left shoulder conditions that were the subject of claimant's occupational disease claim and previously diagnosed tendinitis and bursitis conditions affecting the same shoulder. Significantly, the tendinitis and bursitis conditions were diagnosed *after* the injury to claimant's shoulder that was the subject of the accepted 1977 claim. Because of employer's failure to disclose its claims file, claimant and his treating physician did not know of the accepted 1977 injury and that claimant had complained of back and shoulder injuries in connection with his work for over a decade. The disclosure of that information could well have enabled claimant's treating physician to link the tendinitis and bursitis conditions to claimant's work and, hence, to the development of the conditions that were the subject of the occupational disease claim.

Because employer violated the disclosure requirements of OAR 438-07-015, the Board was required to consider whether a continuance was the appropriate response. Because the Board failed to do that, I would remand the case to the Board for further consideration.

I dissent.

---

[1] Even though the Board stated that it would not consider the disputed evidence, it adopted the ALJ's conclusion that the attending physician's diagnosis of an occupational disease failed to account for claimant's earlier-compensated injury. The only evidence of that earlier injury was contained in the supposedly excluded claims file documents. Because I conclude that the Board must address the discovery issue, it is not necessary to decide whether the Board erred in accepting that conclusion.